**FILED**
**CLERK**

11:54 am, Mar 29, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
HICKSVILLE WATER DISTRICT,

                Plaintiff,

        -against-

PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION, PHILIPS
NORTH AMERICA LLC, LONG ISLAND
INDUSTRIAL GROUP ONE LLC, LONG
ISLAND INDUSTRIAL GROUP LLC,
LONG ISLAND INDUSTRIAL, LLC, GSM
LI LLC, ICA LI LLC, SAF LI LLC, and FED
LI LLC,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-04442 (ADS)(ARL)

**APPEARANCES:**

**Napoli Shkolnik PLLC**
*Counsel for the Plaintiff*
360 Lexington Avenue, 11th Floor
New York, NY 10017
      By:    Paul J. Napoli, Esq.,
             Tate J. Kunkle, Esq., Of Counsel

**Morgan Lewis & Bockius LLP**
*Counsel for the Philips Defendants*
101 Park Avenue
New York, NY 10078
      By:    John McGahren, Esq.,
             Stephanie Feingold, Esq.,
             Ariel Kapoano, Esq., Of Counsel

**Greenberg Traurig LLP**
*Co-Counsel for the LIIG Defendants*
200 Park Avenue
New York, NY 10166
      By:    Steven Russo, Esq.,
             Robert Rosenthal, Esq.,
             Evan Preminger, Esq., Of Counsel

**Sive Paget & Riesel PC**
*Co-Counsel for the LIIG Defendants*
560 Lexington Avenue
New York, NY 10022
       By:      Mark A. Chertok, Esq.,
                Jonathan Kalmuss-Katz, Esq., Of Counsel


**SPATT, District Judge**:

On June 25, 2017, the plaintiff Hicksville Water District ("HWD" or the "Plaintiff") commenced this action against defendants Philips Electronics North America Corporation, and Philips North America LLC (together, "Philips"), as well as Long Island Industrial Group One LLC, Long Island Industrial Group LLC, Long Island Industrial LLC, GSM LI LLC, ICA LI LLC, SAF LI LLC, and FED LI LLC (together "LIIG") (all together, the "Defendants"). The Plaintiff alleges violations of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), as well as state-law claims of public nuisance, negligence, failure to warn, negligence *per se*, trespass and private nuisance.

Presently before the Court are two motions, one by Philips, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted and another by LIIG seeking the same relief pursuant to Rule 12(b)(6) (together, the "Instant Motions").

For the following reasons, Philips' motion to dismiss is granted in part and denied in part and LIIG's motion to dismiss is granted in part and denied in part.

# I. BACKGROUND

## A. THE FACTUAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

The Plaintiff is a public utility based in Hicksville, New York. It serves a 7.9 square mile area and contains two elevated storage tanks, three ground level tanks, and ten plant sites with fifteen public drinking water wells. HWD obtains its water from the Long Island Aquifer System, the principal drinking source for the area. It has been classified as a "sole source" aquifer under the Safe Drinking Water Act of 1974, 42 U.S.C. § 300 *et seq*. HWD provides water to 48,000 customers in more than 15,000 homes and businesses in parts of Hicksville, Bethpage, East Meadow, Jericho, Levittown, Syosset and Westbury.

Within the HWD is a commercial property located at 230 Duffy Avenue, Hicksville, New York (the "Property"). The Property consists of 6.76 acres of land adjacent to Long Island Railroad tracks and consists of a 122,900 square foot building and a parking lot.

On or about 1953, Philips, the owner of the Property at that time, built a factory on the Property which manufactured electron tubes and semiconductors. Two years later, Philips "purchased" Amperex Electronics Corporation and moved their manufacturing operation from Brooklyn, New York to the Property. Philips' manufacturing operations at the site included the machining, heat treating, chemical cleaning, metal and glass working, cathode coating and metal plating processes that included the use of industrial solvents. These manufacturing operations continued from 1953 through 1989.

Throughout that time, the Plaintiff alleges that Philips' manufacturing process included the use of 1,4-Dioxane, a synthetic industrial chemical that is completely miscible in water. 1,4-

Dioxane is widely used as a stabilizer in certain chlorinated solvent, paint strippers, greases and waxes. It is classified by the Environmental Protection Agency ("EPA") as "likely to be carcinogenic to humans" by all routes of exposure. Short-term exposure may cause eye, nose and throat irritation; long-term exposure may cause liver and kidney damage. 1,4-Dioxane can migrate rapidly into the groundwater and is relatively resistant to biodegradation in the subsurface.

In 1989, Philips ceased operations and, for all intents and purposes, closed the Property. At that time, the manufacturing equipment was allegedly removed. On February 13, 2007, the Property was purchased by LIIG, the current owner.

In July 2014, the EPA released monitoring data from one of the Plaintiff's underground wells, Well 4-2, which showed that 1,4-Dioxane levels were 33 parts per billion ("ppb") in the well. While the EPA has no standard for 1,4-Dioxane, the New York State Department of Health ("DOH") standard is 50 ppb. Allegedly, the Plaintiff is required to "take steps to protect the public health" if levels exceed half the DOH standard.

As a result of the 1,4-Dioxane levels, Well 4-2 was taken off-line in January 2015. It has remained off-line ever since.

In October 2016, the New York State Department of Environmental Conservation ("DEC") listed the Property as a Superfund site "due to the elevated levels of toxic solvent contaminants in both the groundwater and soil vapor." There has allegedly been remedial work performed at the Property under the oversight of the DEC.

The Plaintiff alleges that the Defendants contaminated the Plaintiff's soil, groundwater and potable water supplies by their manufacturing operations, and failure to remediate, contain, or timely notify the Plaintiff, after becoming aware of the above-mentioned contamination.

HWD is seeking damages for investigation costs, testing costs, treatment costs as well as damages to HWD's property. In total, the Plaintiff is seeking compensatory damages in the amount of $350,000,000 and punitive damages of $600,000,000.

## B. THE RELEVANT PROCEDURAL HISTORY

On June 25, 2017, the Plaintiff filed the above-mentioned complaint in the Supreme Court of the State of New York, Nassau County. The Defendants subsequently filed a joint notice of removal on July 27, 2017.

On September 11, 2017, Philips moved under Rule 12(b)(6) to dismiss the complaint, contending that the Plaintiff's allegations, even if taken as true, fail to plausibly state claims upon which relief can be granted. That same day, LIIG filed a separate motion under Rule 12(b)(6) also seeking to dismiss the complaint. Both motions are fully briefed. The Court notes that the Plaintiff has withdrawn its private nuisance claim.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second

Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT

Philips requests that the Court take judicial notice of two documents: (1) the Hicksville Water District 2013 Drinking Water Quality Report; and (2) the Occurrence Data for the Unregulated Contaminant Monitoring Rule. *See* Declaration of Stephanie R. Feingold, Docket Entry 14-1. LIIG requests that the Court take judicial notice of three documents, two of which are the above-mentioned documents that are also requested by Philips. The third document is a copy

of Reporting Requirements for the Fourth Unregulated Contaminant Monitoring Rule by the EPA. As a preliminary matter, the Court must first address whether these materials may be properly considered by the Court for the purposes of adjudicating this motion.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *Halebian v. Berv,* 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. April 28, 2010).

The Plaintiff and the Defendants concur that the documents at issue are public documents and as such, the Plaintiff concedes that the Court may take judicial notice of their existence. However, the Plaintiff contends that they may *only* be cited for their content and the fact of their existence and are inadmissible when being offered for the truth regarding the Plaintiff's knowledge at a given time. While the Court concurs that public records may not be used on a motion to dismiss to demonstrate the truth of the matters asserted in the document, it disagrees that these documents are being offered for such a purpose. The Defendants are not introducing these documents as evidence of, for example, the amount of 1,4-Dioxane that is in Well 4-2. To be clear, such a use would be improper in a motion to dismiss. However, the Court may use these documents to demonstrate the existence of such a document or the Plaintiff's knowledge of a given fact at a particular time. *See Singh v. Wells*, No. 1:09-cv-500, 2010 WL 3259996, at *2 n. 2 (N.D.N.Y. Aug. 17, 2010) (holding that the Court may take judicial notice of documents to "demonstrate Plaintiff's knowledge at a particular time").

## C. STATUTE OF LIMITATIONS

The Defendants argue that the Plaintiff's state law claims are time-barred because HWD knew of the alleged contamination prior to July 2014. The Plaintiff contends that the Defendants are improperly applying the statute of limitations.

New York Civil Practice Law and Rules § 214-c(2) states, in pertinent part:

Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

N.Y. C.P.L.R. 214-c; *see also Jensen v. Gen. Elec. Co.*, 82 N.Y.2d 77, 623 N.E.2d 547, 555 (1993); *MRI Broadway Rental, Inc. v. U.S. Mineral Prods. Co.*, 92 N.Y.2d 421, 704 N.E.2d 550, 554 (1998) ("[D]iscovery occurs when, based upon an objective level of awareness of the dangers and consequences of the particular substance, the injured party discovers the primary condition on which the claim is based." (internal citations omitted)). In other words, HWD's claims accrue on the date that the Plaintiff discovered the injury or on the date that the Plaintiff should have discovered the injury in the course of exercising reasonable diligence. In the instant case, the Plaintiff's claims accrue when it knew or should have known of the alleged contamination of its groundwell. *Suffolk Cty. Water Auth. v. Dow Chem. Co.*, 35 Misc. 3d 307, 942 N.Y.S.2d 765 (Sup. Ct. 2012), *aff'd as modified*, 121 A.D.3d 50, 991 N.Y.S.2d 613 (2d Dep't 2014) (holding that the injury occurred when the Plaintiff knew or reasonably should have known of the water contamination).

The statute of limitations is an affirmative defense where "the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (internal citations omitted). The adjudication of a statute of limitations defense is highly fact dependent. As such, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010).

The Court finds that resolving the Defendants' statute of limitations argument is inappropriate, given the fact-specific evaluation that is required. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) ("'Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, the complaint should not be dismissed on motion and the question should be left to the trier of fact.'" (quoting *Glod v.*

9

*Morrill Press Div. of Engraph, Inc.*, 168 A.D.2d 954, 564 N.Y.S.2d 905, 908 (4th Dep't 1990)));

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) ("[T]he determination of [a statute of limitations defense] requires a consideration of the merit of both parties' claims and defenses."); *Ortiz*, 755 F. Supp. 2d at 401 ("District Courts … have not dismissed actions as untimely on Rule 12(b)(6) motions unless the 'complaint shows clearly that a claim is not timely.'" (quoting *Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171, 2010 WL 3238955, at *9 (S.D.N.Y. July 19, 2010))); *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 353-54 (D. Vt. 2010) ("A statute of limitations analysis is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiffs' claims … Accordingly, unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." (internal citations and quotation marks omitted)).

However, even after conducting such an analysis, the Defendants have not met their burden. In cases involving the contamination of groundwater wells, the statute of limitation typically begins to run when the Plaintiff should have discovered the injury. In this context, in order for the statute of limitations to run, knowledge of both the dangers of contamination as well as the harmful impact are required. It is not enough to merely detect contamination. The Second Circuit requires "knowledge that the contamination [i]s significant enough to justify 'an immediate or specific remediation effort.'" *Bethpage Water Dist. v. Northrop Grumman Corp.*, 884 F.3d 118, 128 (2d Cir. 2018) (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 725 F.3d 65, 112 (2d Cir. 2013)). In other words, the statute of limitations begins to accrue when a plaintiff has knowledge of a contamination at levels that would prompt a "reasonable water provider" to take "immediate and specific remediation efforts" to address the contamination. *Id.* at 129.

Given the current procedural posture of the case, and the limited documentation that this Court has taken judicial notice of, the Defendants have failed to meet their burden. The Plaintiff alleges in the complaint that the EPA's data demonstrated that Well 4-2 had levels of 1,4-Dioxane that were 33 ppb. The Court took judicial notice of documents to establish that HWD knew of the EPA test results that resulted in 1,4-Dioxane levels of 33 ppb on or about July 2014. It is not clear at that time that a "reasonable water provider" would take immediate action at that time. The EPA testing result was below the DOH standard. As other courts in the Second Circuit have noted, "even clean, good-tasting water contains dozens of contaminants at low levels." *In re MTBE Prod. Liab. Litig.*, No. 04 CV 2389, 2007 WL 1601491, at *6 (S.D.N.Y. June 4, 2007), *on reconsideration sub nom. In re MTBE Prod. Liab. Litig.*, No. 1:00-1898, 2007 WL 2936214 (S.D.N.Y. Oct. 4, 2007).

Well 4-2 was taken offline in January 2015. At that time, the Plaintiff took "immediate and specific remediation efforts" to address the 1,4-Dioxane contamination of the groundwater. The Plaintiff had undoubtedly suffered a legally cognizable injury and at that time, the statute of limitations began to run. In the Court's view, it is not clear *as a matter of law*, that prior to January 2015, the Plaintiff suffered such an injury.

The Court disagrees with the Defendants that *Bethpage Water District* leads to a conclusion that the statute of limitations accrued on or before May 2014. Although the Second Circuit ruled that the statute of limitations accrued before the contamination at issue reached the Plaintiff's groundwater wells, the Bethpage Water District ("BWD") took a series of extensive remedial actions between June 2007 and February 2013 to combat the contamination that was discovered. BWD's actions during that time included the construction of additional water treatment facilities, a declaration of a public health emergency, and removing two wells from service. *Bethpage Water*

*Dist.*, 884 F.3d at 123-24. This stands in stark contrast to HWD, which allegedly first took action in January 2015 by removing the well at-issue from service.

The Defendants allege that the Plaintiff was required to "take steps to protect the public health" after discovering the 1,4-Dioxane levels. However, even though these levels were below the DOH standard, this is insufficient under *Bethpage Water District* to trigger the statute of limitations. The Plaintiff does not allege any earlier remedial actions and unlike the series of events in *Bethpage Water District*, there is nothing that would allow this Court to conclude *as a matter of law* that an injury accrued prior to Well 4-2's removal.

**D.  GENERAL OBJECTIONS TO STATE TORT-BASED CLAIMS**

   **1.  Causation**

The LIIG Defendants seek the dismissal of all state law claims for the alleged failure to sufficiently plead proximate causation. The Plaintiff contends that this argument is inapplicable at the motion to dismiss stage.

LIIG's assertion is inappropriate at such an early stage of the litigation. "Causation generally is a question for the finder of fact." *Stern v. City of N.Y.*, No. 12-CV-5210, 2015 WL 918754, at *5 (E.D.N.Y. Mar. 3, 2015) (quoting *DePace v. Flaherty*, 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002)); *see also Margrave v. British Airways*, 643 F. Supp. 510, 513 (S.D.N.Y. 1986) ("[T]he question of proximate cause may be one for the court where … reasonable jurors could reach only one conclusion regarding the issue of proximate cause.").

The LIIG Defendants cite four cases that purport to convince this Court that proximate causation is properly at issue during a motion to dismiss. Yet, only one of these cases share the current stage of the instant litigation. *See Schlanger v. Four-Phase Sys., Inc.*, 555 F. Supp. 535 (S.D.N.Y. 1982). There, the district court *denied* the defendant's motion to dismiss. *Id*. at 539.

12

The remaining three cases were decided at different stages of the litigation and are inapplicable to the sufficiency of the Plaintiff's pleading. *See Sahu v. Union Carbide Corp.*, 528 F. App'x 96 (2d Cir. 2013) (decided at summary judgment); *Sinicki v. General Elec. Co.*, No. 1:05-cv-508, 2005 WL 1592961 (N.D.N.Y. July 7, 2005) (opinion regarding motion to remand); *Ivory v. Int'l Bus. Machs. Corp.*, 116 A.D.3d 121, 983 N.Y.S.2d 110 (3d Dep't 2014) (decided at summary judgment).

Furthermore, as other district courts have noted, groundwater contamination cases typically involve extensive discovery. *See Bethpage Water Dist. v. Northrop Grumman Corp.*, No. 13-CV-6362 2014 WL 6883529, at *2 (E.D.N.Y. Dec. 3, 2014) (noting the "considerable" discovery burdens in groundwater contamination cases). The Defendants alleged activity began in 1953, continued for decades and likely involved numerous agencies. This Court declines to rule as a matter of law that the Defendants' activities at the Property failed to proximately cause the Plaintiff's alleged injuries.

### 2. Damages

The Court also finds that the Plaintiff has sufficiently alleged a cognizable injury in regard to its state law claims. The LIIG Defendants categorize HWD's damages into the following four groupings: (1) investigation and testing costs; (2) treatment costs; (3) damages to HWD's property; and (4) attorney's fees and costs.

LIIG's argument only merits a brief discussion. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The LIIG Defendants make four primary assertions regarding their self-created categories: (1) HWD's testing and reporting requirements require testing; (2) HWD fails to specify how it intends to treat the

allegedly contaminated Well 4-2; (3) HWD's water system has not been damaged, as the Plaintiff is still able to supply water to its customers; and (4) requests for attorney's fees and costs are not recoverable. All of these arguments are ripe for discovery as they require additional factual development before a determination can be made regarding their viability. The Court is unable to evaluate the strength of the LIIG Defendants' arguments without a more developed record. As such, these arguments are inappropriate at the current stage.

### 3. Group Pleading

The LIIG Defendants also object to the Plaintiff's alleged failure to differentiate between the Defendants in the complaint. This, LIIG claims, prevents it from being able to discern amongst the Defendants in its accusations of wrongdoing. Nowhere in HWD's complaint is an allegation directed against particular defendants. The alleged actions are attributed to all of the Defendants. While this would be problematic if the Plaintiff's complaint alleged fraud, *see* FED. R. CIV. P. 9(b); *Amsler v. Corwin Petrol. Corp.*, 715 F. Supp. 103, 105 (S.D.N.Y. 1989); *Goldberg v. Meridor*, 81 F.R.D. 105, 110-11 (S.D.N.Y. 1979), HWD's allegations are subject to the less stringent requirements of Rule 8. The Plaintiff's complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As such, HWD's failure to differentiate between the Defendants does not run afoul of the liberal pleading requirements of Rule 8.

### E. AS TO THE INDIVIDUAL NEW YORK STATE LAW CLAIMS

### 1. Public Nuisance

The LIIG Defendants contend that the Plaintiff fails to establish a public nuisance claim against LIIG. There are two types of nuisance actions in New York State, public nuisance and private nuisance. A public nuisance is "an offense against the State and is subject to abatement or

prosecution on application of the proper governmental agency[.]" *State of New York v. Fermenta ASC Corp.*, 160 Misc.2d 187, 608 N.Y.S.2d 980, 985 (Sup. Ct. 1994) (internal citations omitted). In order to properly allege a public nuisance, a plaintiff must allege: (1) the existence of a public nuisance; (2) conduct or omissions by a defendant that create, contribute to, or maintain the public nuisance; and (3) particular harm suffered by a plaintiff different in kind from that suffered by the community at large. *Nat'l Ass'n for the Advancement of Colored People v. Acusport, Inc.*, 271 F. Supp. 2d 435, 482 (E.D.N.Y. 2003); *accord Copart Indus. Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971 (1977) (internal citations omitted). Significantly, intentional or negligent conduct on the part of a defendant is necessary to state a claim. *Id*. Under New York law, the elements of a private nuisance claim are generally the same. *Cangemi v. United States*, 939 F. Supp. 2d 188, 205 (E.D.N.Y. 2013).

First, the LIIG Defendants allege that the Plaintiff has failed to plead any conduct or omissions on the part of LIIG that resulted in a public nuisance. The Court disagrees. The complaint alleges that the Defendants released 1,4-Dioxane into the groundwater supply. As multiple courts in this district have found, "the release or threat of release of hazardous waste into the environment" constitutes a nuisance. *New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 29 (E.D.N.Y. 2011) (citing *N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1985)). On the facts as alleged in the complaint, HWD has asserted acts by the LIIG Defendants that give rise to a public nuisance.

Furthermore, the LIIG Defendants assert that the Plaintiff fails to allege that LIIG knew or had reason to know that its acts or omissions would create, contribute to or maintain the alleged public nuisance. To demonstrate that a defendant's conduct was negligent in the context of a public nuisance claim, a plaintiff must show (1) a duty of care owed to the public by the defendant;

15

and (2) a breach of duty as a result of the failure to conform to that conduct.  There is no question that the LIIG Defendants owed a duty of care to the public regarding the release of 1,4-Dioxane into the groundwater.  At issue is whether the LIIG Defendants demonstrated a lack of ordinary care.  HWD specifically alleged that the "Defendants knew or in the exercise of reasonable care should have known that the release of … 1,4-Dioxane, into the subsurface would and has unreasonably and seriously endangered, injured and interfered with the ordinary comfort, use and enjoyment of vital groundwater resources."  This is not a case where the complaint is "devoid of any allegation from which it can be inferred that … defendants knew the material dumped [into the environment] was hazardous."  *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 428 (E.D.N.Y. 2017).  Based on the allegations contained in the complaint and drawing all reasonable inferences in favor of the Plaintiff, HWD has asserted a proper claim for public nuisance.  As such, the LIIG Defendants' motion to dismiss the Plaintiff's claim for public nuisance is denied.

### 2. Negligence

Contrary to the LIIG Defendants' contentions, the Plaintiff successfully pleads a negligence cause of action under New York State law.  "'In order to establish a prima facie case of negligence under New York law, a claimant must show that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach.'" *Barone v. United States*, No. 12-cv-4103, 2014 WL 4467780 (S.D.N.Y. Sept. 10, 2014) (quoting *Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7, 9 (2d Cir. 2009)).  *See, e.g.*, *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013); *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 59 N.E.3d 485, 490 (2016); *Luina v. Katharine Gibbs Sch. N.Y., Inc.*, 37 A.D.3d 555, 830 N.Y.S.2d 263, 264 (2007).

LIIG's only contention is that HWD unsuccessfully pleads that LIIG failed to exercise due care in allegedly polluting the Plaintiff's groundwater supply. The Second Department recently explained that, "[i]n cases involving the pollution of underground waters, liability arising from negligence may be founded only upon a demonstration that the defendant failed to exercise due care in conducting the allegedly polluting activity, and the he or she knew or should have known that such conduct could result in contamination." *Murphy v. Both*, 84 A.D.3d 761, 762, 922 N.Y.S.2d 483 (2d Dep't 2011) (citing *Strand v. Neglia*, 232 A.D.2d 907, 908, 649 N.Y.S.2d 729 (3d Dep't 1996)). Read in the light most favorable to the Plaintiff, HWD successfully pleads that the Defendants failed to exercise due care in allowing 1,4-Dioxane to enter the Plaintiff's groundwater supply and either knew or should have known that their actions would have such a result.

Consequently, the LIIG Defendants' motion to dismiss the Plaintiff's negligence cause of action is denied.

### 3. Failure to Warn

LIIG contends that the Plaintiff's negligence-based failure to warn claim fails for a variety of reasons. To successfully plead a *prima facie* case for negligent failure to warn under New York State law, "a plaintiff must show that (1) the manufacturer had a duty to warn; (2) the manufacturer breached such duty so that the product is rendered defective, i.e. reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered loss or damage." *Bah v. Nordson Corp.*, No. 00-CV-9060, 2005 WL 1813023, at *13 (S.D.N.Y. Aug. 1, 2005). "As oft-stated, plaintiffs need not allege facts supporting every element of a [failure to warn] claim." *In re MTBE Prod. Liab. Litig.*, 379 F. Supp. 2d 348, 426 (S.D.N.Y. 2005).

First, the Defendants allege that the duty of reasonable care only extends to the Defendants' property, i.e. duty is specific to physical entry onto the property. However, the Defendants' alleged use of 1,4-Dioxane on the Property "could be construed as the act which amounted to or produced the unlawful invasion of [the Plaintiff's] property." *Id*. Furthermore, the Plaintiff has sufficiently raised factual issues as to whether the Defendants had a reason to know or expect that 1,4-Dioxane would seep into the Plaintiff's groundwater.

The LIIG Defendants further allege that HWD failed to "explain how LIIG could have issued a warning." The feasibility of issuing a warning under the particular circumstances of the instant case are "intensely fact specific." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 243, 700 N.E.2d 303 (1998). Furthermore, the Second Circuit has previously underscored that "[t]he adequacy of the instruction or warning is generally a question of fact to be determined at trial." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) (internal citations omitted); *Liriano v. Hobart Corp.*, 132 F.3d 124, 131 (2d Cir. 1998) ("[I]t is up to the jury to decide whether the manufacturer, in fact, has a duty to warn" (internal citations omitted)).

As such, the LIIG Defendants' motion to dismiss the Plaintiff's claim for failure to warn is denied.

### 4. Negligence Per Se

The Defendants argue that the Plaintiff's negligence *per se* claim fails as a matter of law because the HWD failed to allege any statutory violations.

In New York State, "violation of a State statute that imposes a specific duty constitutes negligence *per se*, or may even create absolute liability. *Elliott v. City of N.Y.*, 95 N.Y.2d 730, 747 N.E.2d 760, 762 (2001). In its complaint, the Plaintiff identifies violations of 6 NYCRR §§ 370-76; § 373.2(a); and § 372.2(b) as the pertinent violations that establish negligence *per se*. These

three regulations are related to hazardous waste management. As the Defendants correctly contend in their briefs, only violations of state statutes can produce a claim of negligence *per se*. *Elliott*, 747 N.E.2d at 762. Although not cited, the enabling statute at issue that is associated with these regulations also bars the claim. Only a statute that protects a definitive class of persons from a particular hazard, which persons within that class are unable to avoid may give rise to negligence *per se* claims. *Van Gaasbeck v. Webatuck Cent. Sch. Dist. No. 1 of Towns of Amenia*, 21 N.Y.2d 239, 244, 234 N.E.2d 243 (1967). Here, the Plaintiff has not specifically alleged a violation of a state statute in the section of the complaint that pertains to negligence *per se*.

HWD counters that a broader reading of the complaint yields a CERCLA cause of action as to the Defendants. However, the Court finds that CERCLA is not a statute designed to protect a class of persons on which a negligence *per se* claim may be premised. CERCLA establishes a strict liability regime that fails to define a standard of care for the purposes of negligence law. Because it is not designed to protect a particular class of persons, it may not be used to establish a negligence *per se* claim. *See Trinity Indus., Inc. v. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 725 (W.D. Pa. 2014) ("Because the CERCLA is an environmental statute that is not tailored to 'protect a particular class of individuals,' it does not establish the applicable standard of care for purposes of negligence law." (internal citations omitted)); *Western Greenhouses v. U.S.*, 878 F. Supp. 917, 930 (N.D. Tex. 1995) ("CERCLA and RCRA are strict liability statutes that fail to define a standard for conduct").

As such, the Defendants' motion to dismiss the Plaintiff's claim for failure to warn is granted.

## 5. Trespass

The LIIG Defendants contend that the Plaintiff's trespass claim fails for two reasons: (1) the Plaintiff does not allege intentional entry onto the land; and (2) trespass cannot be based on groundwater contamination.

"[A] trespass is an intentional physical entry onto the property of another without justification or permission."  *Corsello v. Verizon New York, Inc.*, 77 A.D.3d 344, 357, 908 N.Y.S.2d 57, 69 (2d Dep't 2010), *aff'd as modified*, 18 N.Y.3d 777, 783, 967 N.E.2d 1177, 1180 (2012); *Ivancic v. Olmstead*, 66 N.Y.2d 349, 352, 488 N.E.2d 72 (1985), *cert. denied*, 476 U.S. 1117, 106 S. Ct. 1975, 90 L. Ed. 2d 658 (1986); *Phillips v. Sun Oil Co.*, 307 N.Y. 328, 331, 121 N.E.2d 249 (1954); *see also New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

It is not necessary that the trespasser "intend or expect the damaging consequences of his intrusion," only that he "intend the act which amounts to or produces the unlawful invasion." *Phillips*, 307 N.Y. at 331.  The New York Court of Appeals, in considering trespass claims arising out of the movement of noxious liquids from one property to another, has held that:

> even when the polluting material has been deliberately put onto, or into, defendant's land, he is not liable for his neighbor's damage therefrom, unless he (defendant) had good reason to know or expect that subterranean and other conditions were such that there would be passage from defendant's to plaintiff's land.

*Id*.  In the instant action, the Plaintiff alleges that the Defendants trespassed by intentionally spilling, disposing or otherwise releasing 1,4-Dioxane into the soil and that they "knew, or should have known, that 1,4-Dioxane and its degradation products and ingredients create a substantial risk of harm to groundwater[.]"  In that regard, the Plaintiff has properly alleged the requisite intent to plead a trespass claim in the State of New York.

20

Further, the LIIG Defendants, citing *Ivory v. International Business Machines Corporation*, claim that a trespass claim cannot be based on contaminated groundwater. In *Ivory*, the Third Department noted that groundwater contamination alone cannot support a trespass claim, because "groundwater does not belong to the owners of real property, but is a natural resource entrusted to the state by and for its citizens. 983 N.Y.S.2d at 117. Although, the court did allow the trespass claims to proceed because groundwater "apparently flowed through the soil under the [plaintiffs'] homes," *id*., the instant facts differentiate the case at bar. Unlike *Ivory*, where the plaintiffs were private residential property owners, the Plaintiff in the instant action is a municipal water district that only alleges trespass of contaminated groundwater in underground wells. Hence, while the *Ivory* plaintiffs, as private property owners, had title to "real property [that] includes both the air above the parcel and the earth below it," *Id*. (citing *City of Kingston v. Knaust*, 287 A.D.2d 57, 59, 733 N.Y.S.2d 771 (3d Dep't 2001)), there is nothing that indicates that the Plaintiff here had title to any soil below the Property, which was always owned by one of the Defendants during the course of the relevant time period. If anything, the Plaintiff alleges that the Defendants contaminated *their own soil* underneath the Property.

As such, the LIIG Defendants' motion to dismiss the Plaintiff's trespass claim is granted.

## F. AS TO THE CERCLA CLAIMS

The LIIG Defendants seek the dismissal of the Plaintiff's CERCLA cause of action for three primary reasons: (1) the complaint's failure to allege with "particularity"; (2) a failure to plead that 1,4-Dioxane was released at and migrated off the property; and (3) that the complaint insufficiently pled damages.

"Congress enacted CERCLA, 42 U.S.C. § 9601 *et seq*., to address the cleanup of hazardous waste by imposing strict liability for necessary cleanup costs incurred that are 'consistent with the

national contingency plan.'" *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 220 (2d Cir. 2014) (quoting 42 U.S.C. § 9607(a)(4)(B)).  It "grants the President [the] power to command government agencies and private parties to clean up hazardous waste sites," *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994), and ensures that "everyone who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup," *United States v. Bestfoods*, 524 U.S. 51, 56 n. 1, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) (internal citations omitted).

In order for a plaintiff to successfully plead a *prima facie* CERCLA claim, it must allege that "(1) [the] defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan."  *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir.1992).  CERCLA is a remedial statute, and as such, it should be construed liberally.  *Benderson Dev. Co. v. Neumade Prods. Corp.*, No. 98-CV-0241, 2005 WL 1397013, at *13 (W.D.N.Y. June 13, 2005); *General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 285 (2d Cir. 1992) (per curiam) ("It was Congress' intent that CERCLA be construed liberally in order to accomplish [the statute's] goals.").

The LIIG Defendants' first contention is that the Plaintiff fails to plead with "any particularity."  Pursuant to Rule 8(a)(2), the Plaintiff is not required to plead with particularity in federal court.  FED. R. CIV. P. 8(a)(2); *see also* FED. R. CIV. P. 9(b) (establishing the heightened pleading standard for fraud claims).  The Court notes that a handful of district courts have *sua sponte* created a heightened pleading requirement for CERCLA cases.  *See Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 900 (D. Mass. 1991).

This line of cases is irreconcilable with the Supreme Court's decision in *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). In *Leatherman*, the Supreme Court ruled that the heightened pleading standard established by the Fifth Circuit in civil rights actions pursuant to 42 U.S.C. § 1983 did not comport with the pleading system established by the Federal Rules of Civil Procedure. Since *Leatherman*, a number of courts in the Second Circuit have ruled that CERCLA claims are not subject to the heightened pleading standard of Rule 9(b). *See, e.g.*, *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996), *overruled on other grounds by New York v. Nat'l Serv. Indus.*, Inc., 352 F.3d 682, 685 (2d Cir. 2003) (internal quotation marks omitted)); *New York v. Solvent Chem. Co.*, 218 F. Supp. 2d 319, 348 (W.D.N.Y. 2002); *Warwick Admin. Grp. v. Avon Prod., Inc.*, 820 F. Supp. 116, 121 (S.D.N.Y. 1993). This Court agrees.

HWD's CERCLA cause of action is not subject to the heightened Rule 9(b) pleading standard, and as such, is not required to be pled with "particularity." *See Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (Spatt, J.). Therefore, this claim cannot be dismissed on the ground that it has not been pled with particularity.

Next, the LIIG Defendants argue that the complaint is "devoid of facts supporting an allegation that 1,4-Dioxane has been released at the [Property] and … that 1,4-Dioxane has migrated off the Site to the area encompassed by Well 4-2." This contention only deserves brief discussion. Even a cursory reading of the complaint, in a light most favorable to the Plaintiff reveals that the Plaintiff pleads that 1,4-Dioxane emanated from the Property, migrated off the site and entered Well 4-2 as a result of the Defendants' actions during the relevant time period.

Finally, the Defendants assert that HWD fails "to allege with any specificity" its potential damages. CERCLA allows parties who have incurred costs associated with the cleanup of

hazardous wastes to recover costs in the form of two legal remedies: (1) cost recovery actions under § 107(a); and (2) contribution under § 113(f). *See Schaefer v. Town of Victor*, 457 F.3d 188, 194 (2d Cir. 2006). Section 107(a), which is at issue here, permits recovery of "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan[.]" 42 U.S.C. § 9607(a)(4)(A). LIIG contends that the Plaintiff has failed to allege specific response costs and that this precludes recovery. However, at the pleading stage, an allegation by the Plaintiff that it has "incurred [and will continue to incur] response costs" sufficiently alleges recoverable response costs under section 107(a). *See, e.g.*, *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F. Supp. 713, 717 (W.D.N.Y. 1991); *State of New York v. Gen. Elec. Co.*, 592 F. Supp. 291, 298 (N.D.N.Y.1984).

As such, the LIIG Defendants' motion to dismiss the Plaintiff's CERCLA claim is denied.

## G. AS TO THE PUNITIVE DAMAGES

The Plaintiff also alleges it is entitled to recover punitive damages in connection with it's state-law tort claims. In contrast to compensatory damages, punitive damages are awarded for the purpose of retribution and deterrence. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).

Under New York law, "punitive damages are awarded not for the unintended result of an intentional act, but for the conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard." *Hartford Acc. & Indem. Co. v. Vill of Hempstead*, 48 N.Y.2d 218, 227, 397 N.E.2d 737 (1979). This "consist[ed] of actions which constitute willful or wanton negligence or recklessness but need not be intentionally harmful." *Sweeney v. McCormick*, 159 A.D.2d 832, 834, 552 N.Y.S.2d 707, 709 (3d Dep't 1990) (citing *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 201, 550 N.E.2d 930, 933, 551 N.Y.S.2d 481 (1990)).

24

In determining the degree of reprehensibility of the defendant's conduct, the court should consider (1) whether the harm caused was physical, as opposed to merely economic; (2) whether the tortious conduct evinced an indifference to, or a reckless disregard of, the health and safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the tortious conduct involved repeated actions, or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or was a mere accident.

*Campbell*, 538 U.S. at 419 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576–577, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)).

In the Court's view, the Plaintiff should not be prohibited from seeking punitive damages against the Defendants at this early stage of the litigation. This is not a case where the Plaintiff has "failed to allege facts sufficient to demonstrate that the [Defendants] engaged in conduct which rose to the high level of moral culpability necessary[.]" *Fin. Servs. Vehicle Trust v. Saad*, 72 A.D.3d 1019, 900 N.Y.S.2d 353, 355 (2d Dep't 2010). On the contrary, construing all the facts in favor of the Plaintiff, the complaint supports a reasonable inference that the Defendants knew or should have known of the release and failure to remediate 1,4-Dioxane at the Property as well as its subsequent introduction into the Plaintiff's groundwell. The LIIG Defendants' arguments opposing punitive damages "would be more properly addressed either on a motion for summary judgment or to a factfinder at trial after a fuller record is developed during discovery." *Deangelis v. Corzine*, No. 11 Civ. 7866, 2014 WL 216474, at *1 (S.D.N.Y. Jan. 17, 2014).

Thus, the LIIG Defendants' motion to dismiss as it pertains to the Plaintiff's punitive damages is denied at the pleadings stage.

## H. AS TO THE PLAINTIFF'S REQUEST FOR LEAVE TO REPLEAD

Finally, at the end of their memorandum of law in opposition, the Plaintiff makes a short request to amend its complaint. The Plaintiff does not include a proposed amended complaint,

state how any of its claims could be revived by further amendment, or otherwise set forth a basis for such relief.

This an improper request for leave to file an amended complaint. *See Koehler v. Metro. Transp. Auth.*, 214 F. Supp.3d 171, 178 (E.D.N.Y. 2016) (Spatt, J.) ("Courts have held that a 'bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper under FED. R. CIV. P. 15.") (collecting cases). Further, a district court does not abuse its discretion by denying a party leave to amend claims that would be unsuccessful in a motion to dismiss. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, No. 86 CV 1738, 1988 WL 8706, at *1 (E.D.N.Y. Jan. 22, 1988). Therefore, the Plaintiff's request for leave to amend is denied.

## III. CONCLUSION

For the reasons stated above, the Defendants' Instant Motions to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(6), are granted in part and denied in part. They are granted to the extent that the Plaintiff's fourth and fifth causes of actions are dismissed. The Plaintiff is precluded from advancing a negligence *per se* or trespass claim against the Defendants. The Instant Motions are denied to the extent that the Plaintiff's remaining causes of action may proceed.

It is **SO ORDERED**:

Dated: Central Islip, New York

March 29, 2018

   _/s/ Arthur D. Spatt__

ARTHUR D. SPATT

United States District Judge